**Kenneth A. NICHOLS, et al., Plaintiffs,**

v.

**Daniel GLICKMAN, et al., Defendants.**

No. Civ. 00–340–JO.

United States District Court,
D. Oregon.

March 6, 2001.

James D. Van Ness, Van Ness Hammond, Salem, OR, for Plaintiffs.

Tim W. Simmons, Assistant United States Attorney, United States Attorney's Office, Portland, OR, for Defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Plaintiffs Kenneth and Beth Nichols bring this action pursuant to the Administrative Procedures Act, seeking review of an adverse final decision of the Farm Service Agency ("FSA") setting the purchase price of a farm property under a lease-back-buyback agreement.

The case is now before me on defendants' motion for summary judgment (# 22).[1] For the reasons stated below, the motion is granted in its entirety.

---

1. Plaintiffs named and served three defendants: Daniel Glickman, Secretary of the United States Department of Agriculture; Norman Cooper, Director of the National Appeals Division of the United States Depart- ment of Agriculture; and Keith Kelly, Administrator of the Farm Service Agency of the United States Department of Agriculture. For ease of reference, the three defendants

## FACTS AND PROCEDURAL HISTORY

Except as otherwise noted, the parties generally agree on the factual and procedural background of the present dispute.

Plaintiffs obtained a loan from the Farmers Home Administration ("FmHA") (now FSA). The loan was secured by a mortgage on plaintiffs' farm property, which consisted of 154 acres located in Linn County, Oregon. Declaration of Lynn Voigt ("Voigt Decl."), ¶ 2. Plaintiffs defaulted on the loan and in Spring 1993, conveyed their farm property to FmHA in lieu of foreclosure. At the time of the conveyance, FmHA was required to permit the previous owners of real property, which had been security for a farm loan, to have the first opportunity to lease or purchase the property from FmHA. 7 C.F.R. § 1951.911(a)(1990).[2]

On June 23, 1993, defendant, acting through the FSA, entered into a Lease of Real Property (Leaseback–Buyback) with the plaintiffs. The lease period was five years, from June 23, 1993, through June 22, 1998, and required annual payments of $12,400 per year. *See* Administrative Record ("AR") 0079 (attached to defendant's Concise Statement of Facts). The lease contains an option to purchase, Section E, which, as relevant, provides as follows:

1. Purchase Price—The purchase price for the leased property shall be the market value of the leased property at the time the Option to purchase is exercised, as determined by the [FSA] County Supervisor pursuant to Subpart A of Part 1809 of Title 7 of the Code of Federal Regulations. No more than 90 days prior to exercising the Option to Purchase, the Lessee shall deliver a signed, written request * * * requesting a determination of the proposed purchase price. * * *

2. Exercise of the Option—The Lessee may exercise the Option to Purchase, in writing, at any time prior to the expiration of the Lease by delivering to the [FSA] County Supervisor a signed, written statement notifying the Lessor that the Lessee is exer[cising] the Option to Purchase the property. Failure to exercise the option within the Lease will end the Lessee's rights under the Option to Purchase.

AR 0084.

Plaintiffs claim that in June 1997, Kenneth Nichols was preparing to depart for a six month commercial fishing trip and that on June 11, 1997, he telephoned Patrick Joerger, the Farm Loan Manager for the FSA, and verbally exercised the option to purchase. Declaration of Kenneth Nichols ("K. Nichols Decl."), ¶ 5. The parties dispute both whether there was any phone call and whether a phone call could satisfy the formal requirements to exercise the option to purchase under the lease terms.

On August 19, 1997, Joerger met with plaintiff Beth Nichols at the farm property. His note of the meeting reflects that they discussed the option to purchase:

discussed option to purchase under the leaseback-buyback—Mrs. Nichols stated that husband is working on getting financing and said they needed a value—informed her to have husband contact me when he gets back from his commer-

will be referred to together as "defendant" throughout this opinion.

2. The parties' citations to the relevant regulations and statutes are not consistent, nor have they provided the court with copies of the language in effect during the relevant time frame, much of which has been amended, superceded, or repealed. *Compare* for example, the citations set forth in the Voigt Decl., ¶ 4, in the Joint Pretrial Order, ¶ 3.B., and USDA's Memorandum in Support, pp. 3–4. Despite the confusing references, the court has made every effort to locate and review the applicable provisions.

cial fishing trip—I would then order an appraisal and they would have at least 6 months to seek financing before lease expires.

AR 0619.

On September 27, 1997, FSA ordered an appraisal. The appraisal, performed by Glenn Crouch, MAI, ARA, with plaintiffs' approval, established a market value of the property as of October 9, 1997, of $335,000. *See* AR 0150–238. By letter dated November 5, 1997, defendant notified plaintiffs of the purchase price and reminded them that they must exercise the option on or before the lease expiration date. AR 0260. On November 10, 1997, Joerger reviewed the appraisal with Kenneth Nichols, advised him of the time left to exercise the option, and reminded him that exercise of the option must be in writing. AR 0618.

On May 14, 1998, through a letter written by counsel, plaintiffs formally exercised the option to purchase. In the same letter, they appealed the purchase price established by appraisal and requested an appeals hearing through the National Appeals Division ("NAD") of the USDA. AR 0493.

On August 4, 1998, a NAD hearing officer held a hearing, and on September 1, 1998, issued an Appeal Determination, AR 0060–067, reversing FSA's decision regarding the appraisal on two grounds. First, the hearing officer determined that the valuation date for the purchase price should have been May 14, 1998, the date plaintiffs gave written notice of their intent to exercise the option, not October 9, 1997, the date of the appraisal. Second, the hearing officer held that the appraisal should have taken into account possible hazardous waste present on the property (an underground oil tank (*see* AR 0202)). AR 0062.

Based on the NAD decision, FSA ordered a second appraisal. The second appraisal, which took into account the under-ground oil tank (AR 0604), established a market value of $350,000 as of January 30, 1999. AR 0508. Following some communications with plaintiffs' counsel, FSA asked the appraiser, Jack Rutherford, to review the appraisal and revise the date of valuation from January 30, 1999, to May 14, 1998, to comply with the earlier NAD decision. On May 24, 1999, Rutherford advised FSA that he had done so and confirmed a market value of $350,000 as of May 14, 1998. *See* AR 0614.

On July 13, 1999, FSA notified plaintiffs in writing that the appraised market value of $350,000 was the price at which they could repurchase the property under the leaseback-buyback provision. AR 0764–767. Plaintiffs again appealed the value to NAD. After a hearing, on November 5, 1999, the second hearing officer issued a decision in which he concluded that plaintiffs had failed to carry their burden of demonstrating that the FSA erred in its valuation determination, and upheld the FSA's appraised valuation of $350,000. AR 0707; see generally AR 0701–710.

Plaintiffs then sought review by the NAD Director. On January 27, 2000, the Director upheld the second hearing officer's decision as "consistent with the laws and regulations of the Agency and with the generally applicable interpretation of such laws and regulations * * *," thereby establishing a purchase price of $350,000. AR 0713; *see* AR 0711–714.

The following additional relevant facts are undisputed. As of the date of defendant's motion for summary judgment (December 1, 2000), plaintiffs had remained in possession of the property for 29 months without a lease. Voigt Decl., ¶ 22. From July 1, 1998, plaintiffs failed to pay any lease payments; since July 1, 2000, they have paid $1,000 per month, or $200/month less than required under the lease. According to defendant, plaintiffs owe

$29,800 for possession of the property as of November 30, 2000. *See* Voigt Decl., ¶¶ 23–24.

Additionally, defendant contends, and plaintiffs admit, that plaintiffs have subleased a portion of the property (70 acres). Defendant argues that the sublease violates section C–4 of plaintiffs' lease and asks that plaintiffs be ordered to pay the proceeds of the sublease to FSA.[3]

### STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party.

*T.W. Elec. Service*, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

■■■ Because this case involves judicial review of a final agency action under the Administrative Procedure Act, this court has a narrow role. Review is limited to the administrative record. *Friends of the Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir.1986). Agency decisions may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Dioxin/Organochlorine Ctr. v. Clarke*, 57 F.3d 1517, 1521 (9th Cir.1995).[4] Agency factual findings, however, are conclusive if supported by "substantial evidence" in the record. *Howard v. F.A.A.*, 17 F.3d 1213, 1215 (9th Cir. 1994).[5] Purely legal questions are reviewed *de novo. Howard*, 17 F.3d at 1215.

### DISCUSSION

Plaintiffs' complaint challenges the NAD decision on several grounds. Plaintiffs allege that the valuation date of May 14, 1998, rather than June 11, 1997, is erroneous, because (1) plaintiffs orally exercised the option to purchase on June 11, 1997; and (2) defendant either waived the lease requirement of a written option to purchase or is estopped from relying upon it. As a corollary to that argument, plaintiffs assert that the NAD hearing officer and Director are without competence or jurisdiction to decide legal issues; specifically,

---

**3.** The pleadings are silent concerning the dollar amount at issue in this counterclaim.

**4.** Under the arbitrary and capricious standard, the court considers only whether the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Dioxin/Organochlorine Ctr. v. Clarke*, 57 F.3d 1517, 1521 (9th Cir.1995).

**5.** Under the "substantial evidence" standard, an agency's findings will not be disturbed if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Howard v. F.A.A.*, 17 F.3d 1213, 1216 (9th Cir.1994)(internal quotations and citations omitted).

plaintiffs claim that the NAD exceeded its authority in interpreting the lease to require a written option to purchase. Plaintiffs also allege that the second appraisal improperly failed to consider environmental contamination of the property.

Defendant seeks summary judgment on all of plaintiffs' claims and on two counter-claims, for rent and for proceeds of the sublease. Defendant contends that (1) the NAD has clear authority to apply law and make legal determinations; (2) NAD's determination to use the appraised value of $350,000 as of May 14, 1998, was not arbitrary and capricious; (3) plaintiffs have failed to carry their burden of proving that the appraisals violated agency standards or that the agency decision was erroneous; and (4) plaintiffs owe defendant for use of the subject property. I address these arguments in turn.

1. *NAD's Authority to Make Legal Determinations*

The key issue in this case, and the one on which my decision ultimately turns, is whether NAD exceeded its authority in interpreting the lease to require a written option to purchase. According to plaintiffs, the NAD exceeded its authority in making that determination because, according to them, the applicable regulations limit the NAD to making determinations of fact and legal questions concerning the scope of laws and regulations of the agency.

Plaintiffs specifically challenge Conclusion #3 in the NAD decision dated November 5, 1999. That conclusion states:

Although a verbal contract can be a binding agreement, the history of verbal agreements is full of disputes. The [plaintiffs] argue that a verbal contract (a verbal offer to lease [sic]) was actually made on June 11, 1997, when the Agency and [plaintiffs] discussed (agreed to?) the buy-back process. The

contents of the June 11, 1997, meeting remains in dispute. However, Section E(1) of the signed lease of June 23, 1993, clearly states that the [plaintiffs] may purchase the property at the market (appraised) value of the leased property at the time the Option to Purchase is exercised. Section E(2) of the same lease states further that, "the Lessee may exercise the Option to Purchase, *in writing*, at any time prior to the expiration of the lease." The jist of the signed lease is that the [plaintiffs] *may* make an offer to purchase the property but the offer *will* be in writing. The written offer to purchase the farm was made in the [plaintiffs'] behalf on May 14, 1998. Therefore, the effective date of the [plaintiffs'] offer to purchase and the appraised value of the farm are May 14, 1998.

AR 0706 (emphasis in original).

For their proposition that the NAD exceeded its authority, plaintiffs rely on 7 C.F.R. § 11.10(b) and (c), which set forth rules concerning "Basis for determination" and provides:

(b) In making a determination on the appeal, Hearing Officers and the Director shall ensure that the decision is consistent with the laws and regulations of the agency, and with the generally applicable interpretations of such laws and regulations.

(c) All determinations of the Hearings Officers and the Director must be made on information from the case record, laws applicable to the matter at issue, and applicable regulations published in the FEDERAL REGISTER and in effect on the date of the adverse decision or the date on which the acts that gave rise to the adverse decision occurred, whichever date is appropriate under the applicable agency program laws and regulations.

Plaintiffs also rely on 7 C.F.R. § 11.8(c)(5)(ii), one of several regulations applicable to the conduct of hearings, which provides in part that

"The hearing will be conducted by the Hearing Officer in the manner determined by the Division most likely to obtain the facts relevant to the matter or matters at issue. * * * The Hearing Officer may confine the presentation of facts and evidence to pertinent matters and exclude irrelevant, immaterial, or unduly repetitious evidence, information, or questions."

■ Based on the above excerpted provisions from the many regulations applicable to the NAD, plaintiffs theorize that the NAD may not consider legal arguments. Plaintiffs' theory is interesting but not persuasive. As defendant points out, 7 U.S.C. § 6998(c), which governs the "basis for determination" by both the hearing officer and the Director, provides that the determination "shall be based on information from the case record, *laws applicable to the matter at issue,* and applicable regulations * * *." 7 U.S.C. § 6998(c) (emphasis added).

Plaintiffs have submitted no authority to support their argument that the law applicable "to the matter at issue" in this case cannot and does not include interpretation of the lease at the agency level. To accept that argument would be to make this court the appeals tribunal, rather than the NAD, a procedure not contemplated by the governing statutes and regulations or the APA. Indeed, under the APA, my review of the NAD decision is limited to, among other things, a determination of whether the decision is "in accordance with law," implying, at the very least, that law has been applied by the agency in the first instance.

In sum, assuming that the NAD's interpretation of the lease to require a written option to purchase constitutes a purely legal determination,[6] I conclude the NAD had the authority to make that determination.

2. *The NAD's Factual Determination that Plaintiffs Exercised the Option on May 14, 1998*

Plaintiffs contend that in a telephone conversation on June 11, 1997, they orally exercised the option to purchase, and that FSA's conduct following that telephone conversation (1) demonstrates that FSA waived the written option requirement; (2) modified the terms of the lease agreement; or (3) estops FSA from requiring written exercise of the option.

■ While it may be, as plaintiffs contend, that the applicable Statute of Frauds does not require an option to purchase real property to be in writing, that does not resolve the issue in this case. The hearings officer and NAD Director considered plaintiffs' evidence and various arguments concerning their alleged oral option to purchase, and rejected them. Having reviewed the agency record, I cannot say that the NAD decision was arbitrary, capricious, or an abuse of discretion. Further, there is substantial evidence to support the NAD decision that the proper valuation date for the property was May 14, 1998, the date on which plaintiffs gave formal written notice of their intent to exercise the option.

3. *The Validity of the Second (January 30, 1999) Appraisal*

■ Plaintiffs assert that the second appraisal erroneously failed to consider any

---

**6.** As a practical matter, the NAD simply looked to the express terms of the lease, which permits the lessee to exercise the op- tion to purchase, but requires notice of the exercise to be "a signed, written statement * * *." AR 0084.

# 1180

environmental contamination of the property, as required by the first NAD appeal decision issued September 1, 1998, but the agency record belies that assertion. *See* AR 0533, 0603–604. Consequently, plaintiffs have failed to demonstrate any error in the NAD's reliance on the second appraisal in determining the purchase price for the property.

### 4. *Defendant's Counterclaims*

As discussed above, defendant also seeks summary judgment in its favor on two counterclaims, for unpaid rent and for proceeds of plaintiffs' sublease of the property. Plaintiffs do not deny that they have failed to pay rent and that they have subleased the property, but argue that they should not be required to reimburse FSA for either amount.[7]

■ With respect to the rent, plaintiffs contend, in essence, that they would not have been in a hold-over lease situation "[h]ad FSA followed the terms of the lease agreement regarding appraisal effective date * * *." Plaintiffs' Memorandum, p. 14. Plaintiffs seem to expect that they should be allowed to live rent-free on the property as long as issues concerning the purchase price remain in dispute. They provide no authority for that remarkable position, and I reject it. There being no other valid defense, defendant is entitled to summary judgment on its counterclaim for unpaid rent.

With respect to the sublease, plaintiffs argue [8] that the sublease cannot violate the lease because the lease expired by its own terms on June 22, 1998. Thus, plaintiffs appear to contend that not only should they be able to occupy the property rent free during their numerous appeals, but

they should also be able to retain any profits from use of the land during that time. Again, plaintiffs offer no authority to support their position, and I decline to accept it. Defendant is entitled to recover the proceeds from plaintiffs' sublease. The amount of those proceeds, however, is not before the court at this time; consequently, summary judgment is granted only with respect to liability but not as to the amount of proceeds to be reimbursed.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED as set forth in this opinion. The parties shall provide to the court, in writing within 30 days of the date of this opinion, a proposed procedure and schedule for resolving all remaining issues.

---

7. Paragraph C.4. of the lease plainly prohibits subleases: "The Lessor shall not sublease the property or any portion thereof nor pasture livestock belonging to others." AR 0083.

8. Plaintiffs do not actually address the sublease in their response to defendant's motion for summary judgment. Their only argument concerning the sublease appears in the Joint Pretrial Order at p. 8.